The Honorable Judges of the U.S. Court of Appeals in the 4th and 7th Judicial Circuits. Hear ye, hear ye, hear ye! All persons having business before this Honorable Court are admonished to draw near and give their attention as the Court is now sitting. God save the United States and this Honorable Court. Good afternoon, everyone. We're here on Appeal Number 25-3050. Good afternoon, Judge Pryor. Good afternoon. Good to see you both. Nice to see you. We'll start with the appellant, Mr. Hayes. Good afternoon, Your Honors. May it please the Court. Benjamin Hayes for the appellants. I will endeavor to reserve four minutes for rebuttal. The District Court issued the orders now on appeal in direct violation of the Prohibition in 8 U.S.C. Section 1252-F1 against class-wide injunctive relief that restrains the operations of the government's detention and removal authorities. The District Court's October Modification Order extended the consent decree over the defendant's objections and reimposed the decree's mandates for another four months and directly interfered with their detention authorities. And the Court's November Order compelled the government to release hundreds of aliens from detention. This sort of class-wide injunctive relief is exactly what 1252-F1 forbids. And the District Court's November Order is doubly flawed. The consent decree itself prohibits the release of aliens who are subject to mandatory detention under the Immigration and Nationality Act. But the District Court's November Order directs the government to release individuals who are subject to mandatory detention. So the Court should stay both orders pending appeal. Unless there are questions on appellate jurisdiction, I'd like to start with the 1252-F1 issue. Mr. Hayes, I do have a question about appellate jurisdiction since you raised it. With regard to the 13 individuals where the District Court did find that the plaintiffs had established a violation of the consent decree and ordered them released under the provision of the consent decree, section 4, Roman numeral 4E. Under our case law, we have jurisdiction over an order modifying an injunction where the District Court substantially alters the pre-existing legal relationship between the parties. Here, the government and the plaintiffs agreed that if there were individuals the District Court found were retained in violation of the consent order, that they would be released. And so how is the District Court's order with regard to those 13 individuals a substantial alteration of the pre-existing legal relationship of the parties? So I think this is the November Order? No, this is the October Order. So I think with respect to the October Order, in terms of why there is appellate jurisdiction there, is because the October Order as a whole modified the injunction by... Well, I know that you're saying it modified the injunction by extending the injunction, but I'm focused on those 13 individuals. Since the consent order expressly lays out what happens to individuals where the court has found that the government violated consent decree, then the order says they should be released. And so with regard to those 13, how do we have jurisdiction? Oh, I see. So I think, if I remember correctly, those 13 were with respect to the enforcement order. So there's both an enforcement order and a modification order. So those were with respect to the enforcement order. And so I think that the jurisdiction there, the basis for jurisdiction, is not 1292, but rather is 1291. Because in this court's case, it's like Jones-Elk v. Berg looks at, in the consent decree, post-judgment context, you try to isolate the individual proceeding and find what the last order is in that proceeding and treat that as the final decision for purposes of 1291. And I think the district court's enforcement order, which is the one that involves those 13, is very clearly the final decision in several respects. It is the final decision of the isolated proceeding of the enforcement action, but it is also the final decision in that it, under the terms of the agreement, had the effect of terminating the agreement. The district court, you know, the parties did dispute when the agreement would end, but even the district court acknowledged that when it decided the motion to enforce, that ended the agreement. And so I think it's final in several respects. And so the court would have jurisdiction over the enforcement component of the October order under 1291. And then over the modification, that is under 1292, and the plaintiffs agree with that. And so they don't agree to jurisdiction under the November order, but 1292A would be the basis for that as well. So turning to 1252F1. Can I ask you a question? If we grant the stay as to the October order, do we necessarily have to grant the stay as to the November order, or should we necessarily grant the stay as a November order as well? I think so, and here's why. So if you grant a stay, particularly given the arguments that we've made here, if you grant a stay on the October order, the reason we've said it should be stayed is because the October order violated 1252F1, which means the district court did not have jurisdiction or authority to enter that order. And if that's true, and in other words, the October order essentially, modification order disappears, and no modification of the consent decree occurs, there's nothing for the November order to stand on. That presupposes that there has been an extension of the consent decree. That is the foundation, in essence, of the November order. And if the October order goes away, then I cannot see how there's anything left for the November order. How many detainees? Go ahead. You finish your point. It was different. Okay. How many detainees are left? My understanding, there are about 450. So it hasn't changed in the last week or two? It has changed somewhat. I believe it was originally 614. That had come down a bit, but the latest I have heard is roughly 450. So, Mr. Hayes, I think you were about to talk about 1252F1. As I read the record, the government did raise this issue, the 1252F1 objection, in opposition to classification and its motion to dismiss, before it entered into the consent decree. And as you know, consent decree has both the characteristics of a contract between the parties as well as a judicial order. And so why didn't the government waive, knowingly relinquish, its arguments with regard to Section 1252F1 when it entered the consent decree? After all, it got a benefit for that, which is dismissal of the case. And we also know that 1252F1, at least according to the Supreme Court, is not jurisdictional. And so why isn't that waiver? Well, so a couple of things on that. So first of all, I think there are – I need to parse out a little bit. First of all, our challenge is to the modification order, and that is post-determination of the consent decree. So in terms of – if I understand your question, the government consented to this. The government did not at all consent to the extension of the consent decree through the modification order. So that at least addresses the consent component of it. We did raise 1252F1 after – at several stages more recently. We raised it in opposition to the motion for further relief. I think this is our October 31st filing. But I think a more fundamental point is that I don't think 1252F1 is subject to forfeiture at all. So the Supreme Court said in Biden that it is not jurisdictional. It does not go to a court's subject matter jurisdiction. And we agree with that. But it also said that it is a jurisdictional limit on the court's power to issue remedies. And Amy Gonzalez said something similar to that. It is, as the text says, a limitation on the jurisdiction and authority of a court to do something. And just like a party cannot waive an objection to the court's power – cannot waive a subject matter jurisdiction objection, the court always has to consider that because it addresses the court's power to act. So do here. This is a restriction on the district court's power to do something, and that's not the kind of thing that a party can waive. I'm not sure if you're familiar with a case, Local No. 93 v. City of Cleveland, which arises out of the collective bargaining context. And there, there was a consent decree entered by the parties. And one of the arguments that the City of Cleveland made was that the court couldn't issue the relief that it did in that case when it enforced the consent decree because the statutes didn't permit the court to do so. And the Supreme Court there found – and the site is 478 U.S. 501 1986 – the Supreme Court there had no trouble with that, given finding that, look, when the parties entered the consent decree, the parties entered into this agreement and agreed that the district court could enforce the terms of the consent decree as the parties agreed, despite the fact that, absent the consent decree, the court may not have had the legal authority to do so. And I guess here, and that's what I find unique about this case, right, is that you have this consent decree, which the parties entered into and the government entered into eyes wide open, knowing all the objections that it could have raised. But it did so in order to get the benefit of settling this case. And so in Local Number 93, what the Supreme Court said, at least in my reading, is that the obligations that the parties knowingly incurred are those set forth in the consent decree, and the district court has the power to enforce those terms. Why isn't that what we have here? We have a consent decree. We have the parties knowingly agreeing to it, and the district court is merely enforcing the terms that the parties agreed to as part of the consent decree. It's not kind of making things up on its own. It's recognizing that it's bound by the terms. So I'm not familiar with that case, and so I don't know the exact statutory restrictions that apply. I think here it comes back to the point I was making before, which is that 1252F1, whatever the parties may agree to, it is directed at the court, and the parties may want to agree to a lot of things. They might want to agree to standing in some context or a subject matter jurisdiction, and if there is none, the parties can't agree around that. Well, the parties can agree to, for example, personal jurisdiction, right? The parties can consent around that. Right, but personal jurisdiction is not a restriction on the power of the court to act. I think that's the difference. Well, sure it is, because if the court doesn't have power, doesn't have personal jurisdiction over the defendant, it can't act against that defendant. And so the defendant in a consent decree comes in and says, you know what, I consent to this court's jurisdiction, and I entered this consent decree. I understand the point you're making, but I do think that the language of 1252F1 is far closer to a restriction on subject matter jurisdiction. It is phrased in that way, and the Supreme Court in Biden referred to it as a jurisdictional restriction. Is there another type of statute like this that you can cite where the Supreme Court or any court says it's not waivable, that a restriction on remedies is not waivable? I'm not aware myself of a statute like this, no. Counsel, I have a follow-up question just to make sure that I am following along with your argument as well. It's a suggestion, and I'm looking at the appendix, the addendum page nine, where the parties gave over to the court the ability to resolve the dispute if one arises under the consent decree, as well as a motion to enforce should be implied. Is the suggestion that the government is making this afternoon is that there was an inability for the parties to, in essence, write around 1252F1? I'm trying to make sure that I follow the argument. I think something like that, Your Honor, yes. I think the point is that the parties cannot agree to have an agreement embodied in a court order, which this one is. It's incorporated into a final order of a court, and they can't agree to have the court do something that a statute says the court may not do. Mr. Hayes, if they could, what would prevent the current administration in 2028 from going around the country, entering into consent decrees with a whole host of favorable parties to entrench their policy positions on the next administration? I'm not sure I understand. Well, okay, this comes from our holding in Evans v. City of Chicago, right? If it's as simple as the ACLU or the Fraternal Order of Police or any other organization to enter into a contract, a consent decree, with the United States Department of Justice that can then be enforced by any single party or single district court judge anywhere, what would prevent a current administration from going around at the end of the administration and entering into consent decrees to entrench their policy preferences on the next administration? Well, I don't think 1252F1, it certainly doesn't close off all consent decrees, and it doesn't close off consent decrees in a lot of areas relevant to immigration law. It's actually narrow and focused on these particular covered provisions. That's the only thing it applies to. And so I think that in terms of understanding the scope of our argument, it is really just focused on a consent decree that would deal with these particular covered provisions. And it's also the case, it's not just that it can't deal with these provisions, it can't be class-wide. So it is not individuals can enter into consent decrees in settlement agreements with the government. Yeah, but the question here is really on the collateral effects, right? Because at least the way I interpret the government's argument, although this is my own view of it, the way I interpret the government's argument is the government is saying, look, we're not arguing over the terms of the statute that is contained within the consent decree. We're arguing over the terms of 1226, and what 1226 prohibits or does not prohibit. In other words, we're complying with the statute as it was phrased in there, as it was described in the consent decree. The issue is whether or not we can issue these I-200 warrants on the spot, which affects 1226, which is the covered provision, right? Oh, I see. Yeah, so I mean, right. Allowing consent decrees, if I understand your point, allowing consent decrees to be entered on a classified basis here and restrain a covered provision absolutely would lock in the use of those provisions going forward, right, in the way a particular administration might like. Right, so one administration at the end can go around the country entering into consent decrees, waiving the 1252 provision, right, if it is waivable, and then the petitioners, whoever it may be, the Fraternal Order of Police, the ACLU, whoever can go into court during the next administration and simply say, we want to enforce this contract that we entered and district judge, you have to do it. Right, no, I think that could happen. I think one of the virtues of 1252-F1 is to prevent that from happening. That's what we said in the city of Evans. Chicago, in quotes, did not reach a settlement with the plaintiffs. The consent decree was entered in 1984. Negotiations were conducted on Chicago's behalf by its corporation council, who we may suppose acted with the approval of Harold Washington, then Chicago's mayor, and we go on to caution against that and why district judges should have flexibility. I don't see any of that analysis in Judge Cummings' orders, none of it. He acts as if these are two private parties negotiating over the terms of a contract. I agree, Your Honor. Could I reserve my time? I have a follow-up question. I know you wanted to reserve some of your time for rebuttal, so really quickly, looking at the settlement agreement and the consent decree, there's a carve-out that I notice of individual determinations that need to be made. Is that carve-out, would that carve-out in the consent decree and the settlement agreement get around, I guess, the precaution of what 1252 F1 does not permit it even before we get to the covered provisions of 1226? No, I don't think so, for two reasons. First of all, it still remains true that the consent decree as a whole is imposing its requirements vis-a-vis the entire class and with respect to those individual relief provisions themselves, those are going to be used by non-named parties. So absent class members, which is the definition, that's exactly the context of class-wide relief. So that's not a way of getting around, the fact that they have to adjudicate individual disputes at the end of the day, that's being done by class members, which that's exactly the context where Kamala Gonzalez says, class-wide injunctions, where 1252 F1 applies. If I could reserve my time. Can I ask, just a matter of clarification, in your reply, the government states that it is detaining the individuals under 1225. Is that still correct? Is that the provision under which the government gives it authority to detain these individuals? So the government is detaining the approximate numbers, I believe 70-75%, understanding about 70-75% of the individuals of the 450 remaining are subject to mandatory detention under 1225 B2A, yes. And the rest? It would likely be like 1226, if not, or some other detention authority. I'm not sure exactly with respect to that. And is the government's position that with regard to those individuals that proceedings under 1225 and 1226 have been initiated? As to some of them, certainly. How about... I don't know the exact number. But there are others against whom the proceedings haven't been initiated yet? I'm not sure of the answer to that, honestly. Okay, thank you. Okay, thank you, Mr. Hayes. Ms. Sweat. Thank you. Can you see me?  Oh, that camera is not great, isn't it? Well, Judge Pryor knows you're there. There you are. I can see you. Sorry, can you see me now, Judge Pryor? I'm just trying to make it... I can. Thank you very much. Okay. Sorry about that, Your Honor. It's Karen Zwick with the National Immigrant Justice Network.  I'm here to speak on behalf of the plaintiffs. I want to dig right into 1252F, which is where the bulk of the conversation was. But before I get there, I do want to make one point of clarification, which is that the government, for the first time, says that this court has appellate jurisdiction under 1291. That is not an argument that they've made in their papers. It's not an argument they made in their jurisdictional statement. So that's news to us, that they made just now. So just flagging that as an issue, I don't think that there is anything that is appealable under 1291 in this case, period. The only things that would be appealable would be under 1292A1 as modifications of the decree. Getting those... And before we... Let's jump into what's your position regarding appellate jurisdiction for the October and the November order. Yeah, thank you, Your Honor. So as it relates to the October order, the only thing that we... We do agree that the modification, i.e. the extension of the provision of the decree from October 7 to February 2nd, the 118-day extension, that is a modification that's reviewable. That's a modification under Rule 60b-5. That's reviewable for abuse of discretion. That's the only element of our... That's our position as to the October 7 order. That's the only piece of that order that is reviewable by this court. As to the November 13 order, none of it is a modification or a reviewable under 1292A1. The government, of course, argues that it's a freestanding injunction and it's a reviewable as such in that regard. We don't agree with that because we don't agree with their application of 1252F1 to that provision. But as it relates to 1292, that provision does not apply to the November 13 order. Okay, so going to 1252F1, I'd like to start with waiver, which is where Judge Lee started with the government. The government's position as to the October 7 order is wrong. Not only have they not raised... Not only did they enter into an agreement, and as Judge Yu said, they also didn't brief this issue as it relates to the consent decree. They did not mention 1252F1 in their opposition to our motion to enforce. They did not mention it in our opposition to the motion to modify, and they did not mention it at the hearing on those two motions that resulted in the October 7 order. So, like, the waiver issue is actually quite pronounced in this case, and the decision in Biden versus Texas makes it very clear that 1252F1, while it is jurisdictional as to remedies, it is not a subject matter jurisdiction provision, and it can, therefore, be waived. And the Supreme Court, in a separate case called Santos-Zachariah, addressed a different provision in Section 1252 and said that when non-jurisdictional provisions in 1252 are waived, they're subject to waiver and forfeiture. So, our position, at least as it relates to the October 7 order, first and foremost, is that the government has waived their arguments as to... So, Ms. Wick, then you would agree with my proposition that one administration could politically bind the next by entering into consent decrees. They could, to a degree, Your Honor. I think the thing that you're... How so? I mean, how could it be that one district court judge in the United States can entrench policy positions from one administration to the next? And how does that say to the political branches? How useful are they? So, I think that the thing that your hypothetical omits is the fact that the government would have been free to also file a motion to modify or a motion to be relieved of a decree, and that's true in any circumstance. So, one political branch to the next can file requests to modify consent decrees at any time, just like we did in this case. They're free to do that as well, and one political branch to the next could do that. So, that is one safeguard against what you're talking about. And then the other thing I'll say is that, at least as it relates to this particular consent decree, it really shouldn't be a matter of politics so much as a matter of statutory interpretation. All this consent decree really does is interpret a provision of the statute 1357. But the government doesn't... Garland versus Alleman-Gonzalez tell us the government can be wrong in their interpretation of the statute, particularly under 1252. District judges cannot enjoin it. It can be individual relief. In other words, each individual who's arrested can sue the government, and the government can't improperly enforce a statute, but not under 1252. So, you're right, Your Honor, that Alleman-Gonzalez does say that even if the position of the government is wrong, it can't be an injunction, cannot follow, if it is an issue that is truly governed by Section 1252-F1. But this case, again, this case is not governed by Section 1252-F1 for a couple of reasons. The first is that the provision 1357 is outside of Part 4. But isn't the government really saying we don't care about that provision? That's not the manner in which we're executing these arrests. We're doing it under 1226, which is clearly a covered provision. And because Judge Cummings disagrees with the government's interpretation of 1226, he's entering an injunction, which is prohibited by 1252. Isn't that exactly what we have here? I don't think that that is... I don't think that's for the government's position. I don't think the government has ever taken the position that they don't care about 1357. Right, but let's... Why am I wrong on that? Tell me what's wrong about what I just said, about what Judge Cummings is doing. Forget the government's position. Judge Cummings is really looking at 1226, is what he's doing, and he's saying the government is misinterpreting 1226, right? And therefore, I'm going to modify the consent decree to enforce this injunction. So I mean, to the degree that Judge Cummings is doing that, all what he is doing is he is interpreting a term that is used in the consent decree, which is warrantless arrest, and I don't think... What you're getting at, Your Honor, is the use of I-200s in the field, and that is a practice that was never contemplated, never existed before now. That happens all the time, as you know that, in cases. We never thought of this. We hear that in criminal cases all the time. I never thought of this collateral consequence, so I should get out of my plea. And we say, no, no, no, no, no, no, no. Just because you didn't anticipate it doesn't mean that you get out of the terms of the written agreement. Well, sure, I mean, sure, I guess, but the problem with that is that it's not... What Judge Cummings is doing with respect to the I-200s is interpreting the provisions of the contract, and mere interpretations are not appealable to this court, and the government has not moved to modify... But that's not enough under Evans v. City of Chicago. It's not enough that Judge Cummings just interpreted the... I mean, I was surprised... I'm shocked, actually. The district judge's order mentions nothing about this. It doesn't mention Horn, it doesn't mention the City of Chicago. It treats the consent decree as if it's a contract between two private parties. It's not. It's simply not. And we said we could not have been clearer in Evans v. City of Chicago that the district judge must identify the rule of federal law supporting a consent decree. What is the rule of federal law that supports the consent decree in this case? That would be 8 U.S.C. 1357, which says the circumstances under which a warrantless arrest is permissible. But that's where I'm going. Doesn't the government say we're not using that? We're using 1226. And Judge Cummings is then looking under the hood instead of allowing the government flexibility and allowing the government the right to be wrong, as Alam and Gonzalez says that they can be, Judge Cummings is saying, no, no, no, I'm going to fix this. I mean, what I think, Your Honor, is that you're trying to address this I-200 question, which is actually, I don't even think, before this court, because that is a matter of interpretation. But what I'm getting at is, what is Judge Cummings' authority to extend the consent decree based on the rule of federal law, not just looking at the terms of the contract and saying, well, they violated the terms of the contract and therefore, as a remedy, I can extend it. Because we said in Evans v. City of Chicago, that's not enough. I don't think I have a better answer than what I've given you to answer your question. I don't think that your reading is a fair one of what Judge Cummings is doing, particularly in the context of this consent decree. I want to just flag the concern that you flag about one administration to the next. This issue arose during the first Trump administration. After Judge Paul Meyer denied a motion to dismiss, during the first Trump administration, the Department of Justice, the Trump Department of Justice, entered into negotiations about this settlement. This is not a situation that has bore this case. This consent decree was purely foisted upon. I thought the consent decree was entered in 2022. It was signed in 2022, but the negotiation process, which was quite lengthy, began well into the Trump administration, the first Trump administration. What difference does that make? I mean, what if it was President Vance? I mean, would you say, well, there you go, Trump-bound Vance. I mean, what difference does it make? I'm just pointing out that the hypothetical parade of horribles that you're envisioning is not exactly what's going on in this case. It's not a parade of horribles. I think your argument is that one administration can bind the next. There's a lot of writing on this. There's a lot out there on this. Nothing in Judge Cummings' opinion regarding any of this, none of it. I think that what's true is that Congress can bind one administration to the next, and 1357 has existed. 1357 has existed before Trump, before it will exist after Trump. So it is the same with 1226A. Yes. If I might kind of pivot a little bit here to I think the issue that one of the issues that Judge Kirsch really focused on was kind of this gray zone of collateral effects on the covered provisions, right? So Aleman Gonzalez says that if you have an order directed at a different statute but has collateral effects on a covered provision like 1226, 1225, that that's okay, or at least that seems okay. And so then you have two cases on different facts, right? You have Texas v. DHS, which is where the District Court enjoined DHS from cutting wire fencing that Texas had installed, right? And there the government argued, well, you're impacting the way we operate under 1225 and 1226. And the Fifth Circuit said, no, no, no, no, that's collateral. And then we have NS v. Dixon, right, from the D.C. Circuit that kind of went the other way, although there it was undisputed that there were valid I-200 warrants issued. And the question was just who was going to serve them, right? And the question is kind of where does this case lie in that spectrum? I think that NS v. Dixon is actually not a case about collateral effects because NS v. Dixon involved an injunction prohibiting U.S. Marshals from making warrant-based arrests under AUSC 1226A. So it was directly a collateral provision. And when NS tried to argue in that case that 1357 applied, the Circuit Court there said it was, quote, beside the point. So I don't think that this case is really, the government says, of course, that it is very similar to NS v. Dixon, but I don't think that that is accurate. And the case is much more similar to cases like the Concertina Wire case from Texas or Gonzales from the Ninth Circuit or Al Otro Lado from the Ninth Circuit where the courts have repeatedly acknowledged collateral impacts on a cover provision do not bind under 1252. And what concerns me, and I think this is the point that Judge Kirschweiss is an important one, which is we have the fact that the statute 1252F1 expressly states that a court cannot, through an injunction, interfere with the government's operations under 1225 and 1226. And yet we have this other kind of case law and some circuits that say, well, in some instances, just because that effect is collateral, that's okay. It's not what the Supreme Court intended. The, you know, it seems like here, and then we have the PowerPoint presentation that the government issued in this case, which basically said, at least my reading is, you should go out with blank I-200s in order to get around the requirement of the consent decree, right? That is also our reading of it. So, you know, it raises the question of, does the court have the ability to make a determination as to whether or not the government's invocation of 1226 and 1225 are in good faith? Or can a court determine that its use of 1225 and 1226 is actually just a way of trying to get around this 1257, right? And if we find, if a court finds the latter, does it have jurisdiction then to issue the injunction, right? And it seems to me that, it seems to me odd that the government, whoever, you know, has the White House at the time, can just say, oh, well, you know, I think this sheet of paper is good enough under I-200, so therefore, you know, invoke the limits of 1252 F-1. And so I guess, do you have an answer for that? Like, where is that line between, you know, where the court can review whether or not the government is genuinely invoking 1225 and 1226 in its operations, or whether it's just using it as a way of getting around other obligations that it has? I don't have a clear answer for you in terms of where that line was, because I think that Alamang Gonzalez is pretty confusing as to that specific question, given... I believe in Gonzalez, the parties agreed that there was a covered provision. In Dixon, the parties agreed that there was a covered provision. Right, exactly, Your Honor. I do want to say that there are two separate off-ramps, though, for this whole entire conversation about 1252 that I want to make sure to bring up. One of them is that declaratory relief is available notwithstanding 1252 F-1. So if Judge Cummings had just said, I declare that the use of I-200 warrants is impermissible in this way, we would be here in the same situation, and they would have nothing to say about that. And the second element of 1252 F-1 that is also a different off-ramp for this court is the individualized remedies. I understand that this is a class action. Isn't that the off-ramp period individual determinations? 1252 says nothing about individual determinations, and if individuals disagree with the government's interpretation of 1225 or 1226, they can bring a lawsuit. This only concerns injunctive relief. That's the off-ramp. I don't think that there's anything that would prohibit the individual, like require a circumstance where individuals would need to, particularly members of a class, would be required to then bring individual lawsuits. I don't think that 1252 does not say that an individual... It says no injunctions. It's an injunction bar. It's an injunction bar, but as to individualized relief, it doesn't say that a member of a class can't then receive individualized relief pursuant to a consent decree, just because based on their membership in a class without filing a separate lawsuit. But it says... Well, let me ask you a question, by the way, speaking of that. How is it necessary to effectuate federal law to release potential class members? That's what Judge Cummings did. He released potential class members. Not only class... How is that necessary to effectuate federal law? So the government... The reason why the November 13th order even exists is because the government was continuously violating the orders of Judge Cummings and delaying and dragging their feet in terms of the productions. The consent decree requires individualized assessment as to whether or not a person is a class member, yes, but in addition to that individualized assessment as to class membership, it also requires two separate layers of individualized assessment. It requires an individualized assessment as to whether or not the warrantless arrest was a violation of... He didn't do any of that. He just determined that they were a potential member of the class and released them, and then he gave them a 24-hour reprieve, which I have no idea where that comes from in federal law. Do you? Well, the reason he was... I assume no. Yes, the answer is because he was trying to use his equitable authority to enforce a consent decree that the government was intentionally violating. The government... It's not that he didn't say anything about those individualized determinations. The government refused to provide the documentation that is necessary in order to make those determinations. The government... The judge ordered, after the October 7th decision, for the government to begin a production so that we could have an individualized dispute resolution process, which is two-part. The dispute resolution process requires, first, an assessment that the remedy, that the arrest itself was, in fact, a violation, because not all warrantless arrests are violations of the consent decree, and second, that even if a person does have a violation of the consent decree, that they qualify for a relief, because even a person who has a warrantless arrest that is in violation of the decree doesn't necessarily qualify for a remedy. The government didn't even give us the documents that are necessary to begin that process, and in the meantime, they were deporting class members or coercing class members into taking voluntary departure. So what the judge was doing was using the equitable authority that the government gave them, gave him, in signing the consent decree to make sure that people would be able to receive the benefit of the bargain in this case. Did you raise with Judge Cummings the, as you say, the government kind of slow-walking that procedure, at least as you've characterized it? I don't know. I have not looked at the record. Absolutely, yes. That is the whole, the entire purpose of the November 13th order. So why didn't, so was Judge Cummings given the option of not ordering the release of these, of the 400 or so people, but ordering the government to provide the information so that the determinations can be made? The government protested vehemently about their ability to provide this. I will flag that this occurred during the government shutdown, and the government was like, we can't produce any of these documents. We will not begin to produce them. And they asked for eight weeks. And yet, in the meantime, ICE was continuing to remove people during that time period. So because the government basically refused to give, produce the documents, Judge Cummings tried to do what you're asking for, what you were suggesting, Your Honor, but the court, the government refused. Ms. Sweetcombe. Go ahead, Judge Breyer. Go ahead. Go ahead. I apologize. I wanted to make sure, when we were talking through the I-200s, were those warrants issued retroactively? I just want to make sure that I understand factually what you were articulating. Counsel? So our position with respect to the I-200s is that they are, they're not actually warrants because at the time that those documents were completed, a person was both already under arrest, i.e. they were in handcuffs or in the back of a squad car or in their own car with handcuffs on, and there was not a concurrent or previously existing notice to appear in immigration court issued with them. So those warrants are invalid generally, and that is, again, this is not Judge Cummings making something up. That is what the regulations provide, and the regulations, of course, are outside of the scope of the Part 4 of the INA, too, so they're not, like, that is not relevant to the 1252. Doesn't that frame the issue, though? It's your position that these are warrantless arrests under 1367. It's the government's position that these are valid arrests pursuant to a warrant under 1226. In order to modify the consent decree, Judge Cummings looked under the hood and basically said, I disagree with the government's interpretation of 1226, a covered provision, and because the government is wrong in its interpretation of 1226, which, by the way, under Alleman-Gonzalez, has the right to be wrong, I'm going to modify the injunction by extending it four months. Your Honor, Judge Cummings was not only entitled to but required to look under the hood. That's what the consent decree instructed him to do, and that's what the parties agreed to. But then we're no longer in a gray area, are we, as to whether or not the consent decree affects a covered provision, because we're all talking about 1226, because the government is saying, we're not arresting our arrest... We don't have arrest authority. We're not relying on 1367. We're relying on 1226, and Judge Cummings says, you're just wrong in your interpretation of 1226. I don't agree with that characterization, but I also want to... I don't want you to take this as a duck, but I want to highlight only a small number of the people that we raised as violations have this field-based warrant issue. There are many, many other violations of the consent decree that informed Judge Cummings' decision to extend and modify the consent decree on October 7th. The bulk of that decision has... There's 26 violations that he addresses one by one by one, and many of them do not involve field-based warrants. Do you know how many do involve field-based warrants? I'm not... I think it's about half, but I can certainly provide you with a... And then with regard to the other half, they don't have a field-based warrant, or they didn't at the time. There are other obligations under this consent decree. I understand, but my question is with regard to whether or not there's a field-based warrant that half, approximately to your estimation, not going to hold you to it, but half of them do have the I-200 warrant at the time of their arrest, and half of them don't. Yeah, I think that that's right. The other half, they didn't get a warrant at all. They were just purely warrantless arrests without documentation of probable cause. Ms. Wood, can I ask you, the status of the consent decree right now, if we grant the stay, and we order a full briefing on the merits, and then we affirm the district court, it's going to be your position that you get four additional months after the affirmation of the district court's decision, right? Yes, 118 days. 118 days. Or if we deny the stay, then the 118 days just starts now. Yes. Or maybe it starts now, maybe it's already started. Maybe it's already started, right, which is possible, right, because that October to November time frame, that may be an issue for the district court as to how many days remain on the consent decree. But the issue is really regarding the determinations of the 450 or so detainees. Right, I mean, that is, I think, what got us here. The urgency of the 118 days is not, can be decided in two months' time, right? That's not urgent as we sit here today. I think that that's right, Your Honor, and I think that if you're looking for ways to sort of divide this case up, I think that you don't need to stay the October 7th decision. You could stay, I mean, obviously, we would prefer that you not stay either one of them, but they don't have to rise and fall together. Well, let me get to my next question, because if we stay the October 7th order, okay, and to determine whether or not the judge was permitted to extend the consent decree or modify the consent decree in the manner which he did, don't we have to stay the November order because it flows from the October order? I think probably, if you, I think you're probably right, Your Honor, that if the October 7th order is stayed, then the November 7th, the November 13th order would necessarily have to be stayed as well. Okay. With regard to Judge Cummings and the orders, so he was interpreting the consent decree, but one of the main requirements of the consent decree is that the government comply with 1357A2, right? That is, when it detains someone without a warrant. Right. It has to have reason to believe the person is in the country illegally, without legal status, and that their likelihood of flight. That's exactly right, Your Honor. Right, and so the reporting requirements are not in 1357A2, right? Like what the reporting that the government had to do, but the fact that they couldn't detain people without those two elements, that is not only in the consent order, but that is in the statute itself. That's right. If there's nothing else, I will sit down. Okay, thank you very much, Ms. Wick. Mr. Hayes, we'll give you four minutes. Just a few points for rebuttal, Your Honors. So I'd like to address just a few things on forfeiture just to get them out of the way up front. So I think it was mentioned, if I heard it correctly, that the statement that Biden versus Texas decided that 1232F1 is subject to forfeiture, it did not. It was clear that it reserved that question, so it's not like the Supreme Court has told you otherwise, and for the reasons I've given, I think that it is not subject to forfeiture. But even assuming I'm wrong about that, I think this would be a particularly bad case to apply forfeiture. First of all, we have raised it multiple times throughout the course of the decision, including up through our motion for state pending appeal, where the district court addressed the issue. So this is not a case in which you would think normally where forfeiture is appropriate, the district court didn't have a chance to opine on it. He did, he rejected our arguments, but it has been decided below, and normally in that context, the court would hear it. And I think the way the Supreme Court dealt with Ailman-Gonzalez is really instructive, that even if it's not jurisdictional, what happened in that case was the government had not raised, there were two underlying cases, the government hadn't raised 1252-F1 in one of them, and barely raised it in another one. The government sought cert not on that question, and the Supreme Court went out of its way and ordered the government, the parties, to brief that question, sua sponte, and decided the case on that basis. So forfeiture or not, I think the signal from the Supreme Court there is that this is a provision that needs to be taken seriously and applied where it does apply. But in neither of those cases had the government entered into a consent decree prior to the appeal, is that correct? I don't think there were consent decrees, I agree with that, but just to the point of forfeiture. Well, forfeiture in the litigation of a case. Exactly. But I think that's somewhat different from what I was kind of looking at was forfeiture, knowing relinquishment of the right when they entered into a consent decree. I understand they don't involve consent decrees, but I think the underlying point of the saying where someone does not invoke and or knowingly waives or otherwise affirmatively doesn't invoke it, nonetheless, the Supreme Court would decide the case on that basis. Turning to the 1252-F1 merits, I think, Your Honor, we're exactly right to focus on 1226 because both the district court's enforcement order and its modification order were laser-focused on the government's actions using these I-200 wards, which everyone agrees are under the 1226-A provision. Everyone also agrees that that is a covered provision. And the effect of the district court's orders is to say the government cannot operate them the way it is operating them. It must issue them with, I believe, a notice to appear, which the government wasn't doing in some circumstances, or it has to basically treat them like they are warrantless and have the individualized fines of likelihood of escape and so on regardless. Do we have a number, counsel, of how many of the detainees were arrested with the I-200s? So I don't know the number for the larger group that is the subject of the November order. Okay. I take it that the parties would be able to give us that information in short order if it's something that we needed. I don't know how quickly they could, but they could get that information. In short order, I would assume. Yes. So going back to 1226, so I think that's the way to look at this provision. I think the Ennis v. Dixon case is almost directly on point. It's a different factual pattern, but the D.C. Circuit in that case concluded that the I-200 warrants were not properly issued. It wasn't a defect in the warrant. It's just a defect in the person who was issuing them that didn't have training. Either way, it wasn't a valid warrant issued, and the D.C. Circuit said it doesn't matter as Ailman Gonzales says, whether the government is operating the provision correctly or not is beside the point. And I think to my friend's point about there's only a subset of the arrests that issue here that involve I-200 warrants, that exact argument was made in Dixon as well. The Ennis said, well, this shouldn't be a problem for me because my arrest was, everyone agrees, warrantless. And the D.C. Circuit rejected that argument and said it doesn't matter because the injunction applies not just to an uncovered provision, but it applies to restrain a covered provision too. And the remedy was not to parse things out. It was to vacate the injunction in full. And I would think that that would be the appropriate remedy here at the state posture to stay the injunction in full. I see my time is up. Just one more thing, that if the court decides to dissolve the administrative stay, we would request that there be, that be to stay for 14 days just to give the government ordered time to see appropriate relief from the Supreme Court. Okay, thank you, Mr. Hayes. Thank you, Mr. Wick, for your advocacy and the case will be taken under advisement.